IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RAYMOND JAMES TRUST, N.A., TRUSTEE
OF E.C. CARE TRUST, A LOUISIANA TRUST                     PLAINTIFF

v.                           CIVIL ACTION NO: 5:19-CV-103-DCB-MTP

NATCHEZ HOSPITAL COMPANY, LLC d/b/a
MERIT HEALTH NATCHEZ (NHC) formerly
d/b/a NATCHEZ REGIONAL MEDICAL
CENTER, formerly NATCHEZ COMMUNITY
HOSPITAL, L.L.C., MELISSA JONES, M.D.,
JENNIFER RUSS, M.D., DANITA WEARY, M.D.,
BONNIE VINES, R.N., LAURA USNIK, R.N.,
PATRICIA CALVIN, R.N., AND JOHN AND
JANE DOES A; B; C; D; and E                              DEFENDANTS

SECOND ORDER REGARDING MOTION TO EXCLUDE REFERENCE TO
OR TESTIMONY CONCERNING MRI REPORT

THIS MATTER is before the Court on Defendant Danita Weary M.D.'s Motion to Exclude Reference to or Testimony Concerning the MRI Report of Dr. Jeansonne, Radiologist, dated December 15, 2020. [ECF No. 122](the "Motion"). All remaining defendants have joined in the Motion. [ECF No. 147]. Danita Weary, M.D., Natchez Hospital Company, LLC d/b/a Merit Health Natchez (NHC) formerly d/b/a Natchez Regional Medical Center, formerly d/b/a Natchez Community Hospital, L.L.C., Bonnie Vines, R.N., Patricia Calvin, R.N., and Laura Usnik, R.N., are referred to collectively herein as "Defendants". The Court having examined the Motion, the parties' submissions, the record, and the

1

applicable legal authority, and being informed in the premises, finds as follows:

## Background

On October 15, 2019, Raymond James Trust, N.A., Trustee of E. C. Care Trust, a Louisiana Trust ("Plaintiff"), filed this action against Defendants. [ECF No. 1]. Plaintiff alleges, among other things, negligence, breaches of the standard of care, and failure to supervise during the neonatal care of E.C., a minor. Id. According to the Complaint, Defendants' inadequate care of E.C. caused the infant to suffer a grave brain injury and resulted in a diagnosis of spastic quadriplegic cerebral palsy and microcephaly due to a hypoxic ischemic encephalopathy that occurred during labor and delivery. Id. ¶ 39.

The day after E.C.'s birth, Dr. Kevin J. Jeansonne, a radiologist at Rapides Regional Medical Center (formerly known as Rapides General Hospital, "Rapides") interpreted a postnatal MRI of E.C.'s brain and found "no significant abnormal areas of signal … within the brain" and "[n]o abnormal signal … to suggest acute ischemia." [ECF No. 123-1] (the "2015 MRI Report"). During discovery, Defendants' experts issued reports that agreed with the 2015 MRI Report. [ECF No. 150 at 8-9]; [ECF No. 167 at 3-4].

Four days before the end of discovery, Plaintiff's counsel emailed to defense counsel a Second Addendum (dated 12/15/2020, the "Second Addendum") to Dr. Jeansonne's 2015 MRI Report.[1] [ECF No. 151-1]. The Second Addendum did an about-face from the 2015 MRI Report and found E.C.'s postnatal MRI to be abnormal. [ECF No. 150-10].

On December 23, 2020, one day after the close of discovery, the defense filed the Motion now at issue. [ECF Nos. 122 and 123]. In the Motion, Defendants argued that Plaintiff violated Federal Rule of Civil Procedure 26(a)(2) and our District's local rule, L. U. Civ. R. 26(a)(2), by (i) failing to disclose timely Dr. Jeansonne as an expert witness [ECF No. 167 at 5-10];

---

[1] Dr. Jeansonne issued a first Addendum to his 2015 MRI Report on November 8, 2017. [ECF No. 123-2] (the "First Addendum"). The First Addendum states: "No diffusion weighted imaging was obtained on this study. This was a typographical error." Id. Plaintiff represents that the First Addendum was included in Plaintiff's production of the Rapides medical records for E.C. in Plaintiff's Rule 26(a) initial disclosures. [ECF No. 150 at 3]. The Court notes that, shortly before Dr. Jeansonne's issuance of the First Addendum, a letter dated October 11, 2017 from Plaintiff's counsel to the Rapides Medical Records Department [ECF No. 200-3 at 6] raised the issue of missing "diffusion-weighted" images on a disc of E.C.'s radiology images. According to the letter, Rapides had provided a disc of radiology images to Plaintiff's counsel in response to counsel's request in March 2017. Id. Plaintiff's counsel had the images reviewed by a neuroradiologist, who noted the reference to diffusion weighted imaging in the 2015 MRI Report but did not find such images on the disc. Id. Attached to counsel's letter is a signed "Authorization for Release of Protected Health Information (PHI), dated October 2, 2017, which requests all of E.C.'s medical records from 3/1/2015 to the present, including radiology studies. [ECF No. 200-3 at 7].

3

and (ii) failing to provide the expert report required under the rules.  Id. at 10-13.  Defendants urged the Court to limit Dr. Jeansonne's testimony to that of a fact witness and to permit him to testify only regarding his treatment of E.C. in 2015, thereby excluding the Second Addendum and related testimony from evidence.  Id. at 14.

Plaintiff countered that the Second Addendum should not be excluded because Dr. Jeansonne was properly identified as a treating physician of E.C. through Plaintiff's initial production of the complete medical records from Rapides.  [ECF No. 150 at 6].  As a treating physician, Plaintiff contended that Dr. Jeansonne is a non-retained expert and any supplements to his own treatment records (such as the Second Addendum) are admissible.  Id. at 6-8.  Plaintiff concluded that (i) any technical violations of Rule 26 are justified and harmless, (ii) the probative value of the Second Addendum is high, and (iii) Defendants cannot demonstrate prejudice given the amount of time remaining to depose Dr. Jeansonne prior to trial.  Id. at 2.

This Court issued its Order Regarding Motion to Exclude Reference to or Testimony Concerning MRI Report on March 31, 2021 [ECF No. 190] (the "Initial Order").  The Court found that Plaintiff had violated Federal Rule of Civil Procedure 26(a)(2) and our District's Local Uniform Rule 26(a)(2) by failing to

4

make a proper and timely designation of Dr. Jeansonne as an expert witness and by failing to submit either the required expert report (for retained experts) or summary (for non-retained experts). Initial Order at 8-10. The Court deferred its ruling on the appropriate sanctions under Federal Rule of Civil Procedure 37(c)(1) for Plaintiff's discovery violations because of a key fact question that remained unanswered on the record: "What caused Dr. Jeansonne to change his opinion in the Second Addendum?" Id. at 11. It was not clear to the Court whether Dr. Jeansonne amended his opinion years after he issued the 2015 MRI Report based on a reconsideration of the information that was available to him at the time of his initial report on March 26, 2015, or whether his revised opinion in the Second Addendum resulted from his review of new information that was not available at the time he treated E.C. Id. To assist the parties in providing the Court with the missing facts, the Initial Order permitted Defendants to take the deposition of Dr. Jeansonne at a reasonable time prior to trial. Id. at 12.

In response to the Initial Order, Dr. Jeansonne gave a videotaped deposition [ECF Nos. 197-1 & 200-1](the "Deposition") in which he testified that, on March 27, 2015, one day after he interpreted E.C.'s MRI, he reviewed a CT scan of the infant and issued a report. Deposition, Ex. 4 [ECF No. 203-1 at 4] (the "2015 CT Scan Report"); see, e.g., Deposition 17:19-25; 19:22-

5

20:17; 34:7-22. Contrary to his 2015 MRI Report, Dr. Jeansonne reported one day later that the CT scan indicated abnormalities: "IMPRESSION: Diffuse abnormal decreased density of the cerebral hemispheres suggested, worrisome for diffuse cerebral edema recommend correlation and follow-up." Deposition, Ex. 4 [ECF No. 203-1 at 4]; see also Deposition 27:14-18; 28:1-18; 41:2-15. Dr. Jeansonne explained in his Deposition that "worrisome for diffuse cerebral edema" meant "too much water in the brain." Deposition 41:8-10. Dr. Jeansonne further testified that, at the time he issued the 2015 CT Scan Report, he "didn't see a need", id. 27:1-18, to go back and change his reading in the 2015 MRI report because the other treating physicians "got the correct report on the CT report that there was edema in the brain." Id. 28:11-12.

Regarding the open fact question of the basis for Dr. Jeansonne's changed opinion in his Second Addendum, the doctor testified that he had a three-minute phone conversation with a female whose name he did not know but whom he thought "was someone from the law office." Id. 7:21-25; 15:12-16:11. Dr. Jeansonne believed that the call took place in December 2020, the same day that he issued the Second Addendum. Id. 10:8-11; 88:21-24. The caller "wanted to know about the difference between the interpretation of the MRI and the interpretation of the CT done the next day. And there was a discrepancy." Id.

6

9:23-10:1.  Plaintiff's Supplemental Response in Opposition [ECF No. 197] confirms that " … Counsel for Plaintiff inquired whether Dr. Jeansonne would review the discrepancy between the studies of the MRI and the CT scan performed on E.C."  [ECF No. 197 at 7]; see also Deposition 9:20-10:7.  Dr. Jeansonne also testified that the only additional history that he got in this phone discussion was "the history of a traumatic birth."  Id. 15:12-19.  He testified that he did not receive or review documents from either Plaintiff or Defendants (Id. 10:12-14), and he claimed not to have read a letter to him from Plaintiff's counsel's employee, Sage Middleton.  Id. 16:19-17:17.  Dr. Jeansonne stated that, other than agreeing to give his deposition, he never agreed to meet with the female caller or anyone else, and "they" did not make an appointment to meet with him.  Id. 17:8-18:11.  In short, he based his Second Addendum on a comparison of the discrepancy between his 2015 MRI Report and his 2015 CT Scan Report and the additional history of a traumatic birth, which he learned in the three-minute phone conversation in December 2020 with a female he thought "was someone from the law office."  Id. 9:20-10:14; 15:12-16:18.

## Legal Analysis and Discussion

As the Court discussed in its Initial Order, given Plaintiff's Rule 26(a)(2) violations, the Court has the

7

discretion to exclude evidence or order other sanctions under Federal Rule of Civil Procedure 37(c)(1), unless Plaintiff's failures are substantially justified or are harmless. FED. R. CIV. P. 37(c)(1).[2] The Fifth Circuit has set forth four factors that a district court must consider in exercising the discretion permitted under Rule 37(c)(1): (1) the explanation for the failure to identify the witness, (2) the importance of the testimony, (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. Hamburger v. State Farm Mut. Auto Ins. Co., 361 F.3d 875, 883-84 (5th Cir. 2004); see also Robbins v. Ryan's Family Steak Houses, 223 F.R.D. 448, 453-54 (S.D. Miss. 2004). Having reviewed the record and Dr. Jeansonne's deposition testimony,

---

[2] Federal Rule of Civil Procedure 37(c)(1) provides:

(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

    (B) may inform the jury of the party's failure; and

    (C) may impose other appropriate sanctions including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

FED. R. CIV. P. 37(c)(1).

the Court finds that it now is sufficiently informed of the facts to proceed with applying the Hamburger factors and determining whether Rule 37(c)(1) sanctions are appropriate in this case.

(1) The explanation for the failure to identify the witness.

According to Plaintiff, "Plaintiff did not identify Dr. Jeansonne as an expert before the expiration of its designation deadline because it first learned Defendants' experts embraced the erroneous original MRI reading when they served designations … on October 16, 2020." [ECF No. 197 at 7]. The record indicates that Plaintiff's counsel then waited for two months before contacting Dr. Jeansonne in December 2020 about the discrepancy between his 2015 MRI Report and his 2015 CT Scan Report. See Background discussion supra at 6-7. The Court finds that the timing of the opinions reached by Defendants' experts does not excuse Plaintiff's dilatory expert designation in this matter. Regardless of when Plaintiff learned the content of the opinions to be rendered by Defendants' experts, Plaintiff declared in its Rule 26(a) Initial Disclosures dated February 5, 2020 that it "ha[d] in its possession, custody, or control … Medical records and bills from Rapides Regional Medical Center for E.C. from March 26, 2015 through to present." [ECF No. 150-1 at 4]. At least six months prior to the August

9

15, 2020 deadline for Plaintiff's designation of experts, Plaintiff possessed copies of the key medical records that Dr. Jeansonne issued during his treatment of E.C., namely, the 2015 MRI Report and the conflicting 2015 CT Scan Report. Additionally, the record indicates that, as early as March 2017 and no later than October 2017, Plaintiff's counsel received a copy of the Rapides radiological records and had them reviewed by a neuroradiologist.  See note 1 supra; [ECF No. 200-3 at 6]. Plaintiff's counsel wrote to the Rapides Medical Records Department in October 2017 concerning the absence of diffusion-weighted images in its copy of E.C.'s radiology images.  Id. Shortly thereafter, Dr. Jeansonne issued the First Addendum to his 2015 MRI Report to clarify that no diffusion-weighted imaging had been obtained with his MRI report.  Id.  In stark contrast to Plaintiff's 2017 inquiry regarding the mistaken reference in the 2015 MRI Report is Plaintiff's inaction with respect to the conflicting conclusions in Dr. Jeansonne's 2015 MRI Report and his 2015 CT Scan Report.  Having had possession of the key radiological reports years before this lawsuit was filed, Plaintiff had ample opportunity to review and analyze E.C.'s records.  Plaintiff should have been aware of the discrepancy between Dr. Jeansonne's MRI and CT Scan conclusions long before the deadline for Plaintiff's expert designation had expired.  The Court finds nothing on this record that justifies

Plaintiff's inaction with respect to the discrepancy until December 2020.  Finding no substantial justification to support Plaintiff's delay, the first Hamburger factor favors Defendants.

    (2)  The importance of the testimony.

Plaintiff argues that the Second Addendum is vitally important "to reflect an accurate reading of the MRI and to ensure the accuracy of the treatment records of E.C." [ECF No. 197 at 8].  The Court is not persuaded.  In his deposition, Dr. Jeansonne testified that he saw no need to correct the 2015 MRI Report because his next-day interpretation of E.C.'s CT scan effectively did just that.  Deposition 27:1-18; 28:11-12.  Given the existence of the 2015 CT Scan Report and the opinions of Plaintiff's own experts, the Court does not view the Second Addendum as essential to Plaintiff's ability to establish its case.  The second factor also favors Defendants.

    (3) Potential prejudice in allowing the testimony.

Plaintiff argues that "[t]he untimely disclosure of the Second Addendum is harmless because Dr. Weary has now deposed Dr. Jeansonne." [ECF No. 197 at 8].  Plaintiff also argues that the opinions of the defense experts do not rely on the 2015 MRI Report, but "merely state agreement with it. … Absent any such reliance, there is no prejudice to Dr. Weary, or any of the other Defendants, if Dr. Jeansonne is allowed to testify in conformity with the Second Addendum."  Id. at 9.  Defendants

11

counter that "Plaintiff is attempting to put forth a treating physician's **changed** opinion … . [I]f the new interpretation is allowed, Defendants may have to engage new experts to rebut such 'changed' opinion. This would be extremely costly to the defense, as well as cause another undue delay in the case." [ECF No. 199 at 8](emphasis in the original). The Court does not take lightly the additional expense that Plaintiff's admitted "untimely disclosure of the Second Addendum" already has caused the parties in this case. The Court recognizes that, if the Second Addendum is admitted into evidence at trial and Dr. Jeansonne is allowed to testify in conformity with the Second Addendum, the defense's expert opinions could need revisions to account for the Second Addendum. This would cause additional expense and potential prejudice to the defense. The third factor supports the Defendants.

    (4) <u>The availability of a continuance to cure such prejudice</u>.

Neither Plaintiff nor Defendants propose a continuance to resolve this matter. Plaintiff argues that "[a]mple time exists for Defendants' experts to revise their reports in order to state their disagreement with the conclusions in the Second Addendum…." [ECF No. 197 at 9]. Defendants point out that a continuance would not cure the prejudicial expenditures of time and money caused by Plaintiff's delay or "the fundamental

12

unfairness of a treating physician's longstanding opinion being changed late in litigation well after court imposed deadlines." [ECF No. 199 at 10].  The Court agrees that a continuance would not be helpful in resolving this matter.

The Court's application of the Hamburger factors leads the Court to conclude that Plaintiff's Rule 26(a)(2) violations are not substantially justified and are not harmless to Defendants. The Court will therefore exercise its discretion to exclude the Second Addendum dated December 15, 2020, and any related reference to, or testimony regarding, the Second Addendum from evidence at trial under Federal Rule of Civil Procedure 37(c)(1).

ACCORDINGLY,

IT IS HEREBY ORDERED AND ADUDGED that Defendant Weary's Motion to Exclude Reference to or Testimony Concerning That Certain MRI Report by Dr. Jeansonne, Radiologist dated December 15, 2020 [ECF No. 122] is GRANTED.

SO ORDERED AND ADJUDGED this 22nd day of June 2021.

                                        /s/   David Bramlette
                                    UNITED STATES DISTRICT JUDGE