```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      WESTERN DIVISION


RAYMOND JAMES TRUST, N.A., TRUSTEE
OF E.C. CARE TRUST, A LOUISIANA TRUST                PLAINTIFF

v.                              CIVIL ACTION NO: 5:19-CV-103-DCB-MTP

NATCHEZ HOSPITAL COMPANY, LLC d/b/a
MERIT HEALTH NATCHEZ (NHC) formerly
d/b/a NATCHEZ REGIONAL MEDICAL
CENTER, formerly NATCHEZ COMMUNITY
HOSPITAL, L.L.C., MELISSA JONES, M.D.,
JENNIFER RUSS, M.D., DANITA WEARY, M.D.,
BONNIE VINES, R.N., LAURA USNIK, R.N.,
PATRICIA CALVIN, R.N., AND JOHN AND
JANE DOES A; B; C; D; and E                        DEFENDANTS
```

ORDER AND MEMORANDUM OPINION

This matter is before the Court on a Motion for Partial Summary Judgment on Plaintiff's Claims of Failure to Advocate [ECF No. 132](the "Motion") filed by Defendants Natchez Hospital Company, LLC d/b/a Merit Health Natchez (NHC) formerly d/b/a Natchez Regional Medical Center, formerly d/b/a Natchez Community Hospital, L.L.C. (the "Hospital"), Bonnie Vines, R.N., Patricia Calvin, R.N., and Laura Usnik, R.N. (collectively, the "Moving Defendants"). Defendant Danita Weary, M.D. ("Dr. Weary") has not joined this Motion. The Moving Defendants and

1

Dr. Weary are referred to collectively herein as the "Defendants". Also before the Court in connection with the Motion is Plaintiff's Motion to Strike August 9, 2021 Letter Submitted by Defendant Danita Weary, M.D. [ECF No. 207]. The Court having examined the Motion, the Motion to Strike, the parties' submissions, the record, and the applicable legal authority, and being informed in the premises, finds as follows:

## Background

On October 15, 2019, Raymond James Trust, N.A., Trustee of E. C. Care Trust, a Louisiana Trust ("Plaintiff"), filed this action against Defendants. [ECF No. 1]. Plaintiff alleges, among other things, negligence, breaches of the standard of care, and failure to supervise during and after delivery of the infant, E.C. Id. According to the Complaint, Defendants' inadequate care of E.C. caused the infant to suffer a grave brain injury. Id. ¶ 39.

In the Motion, the Moving Defendants seek partial summary judgment on Plaintiff's claims that the Hospital's nursing staff breached the standard of care by failing to advocate for different care and treatment in two instances: (i) the nurses failed to suggest to Dr. Jones, the treating obstetrician, that

2

she perform a Cesarean Section when the vacuum-assisted delivery method failed twice; and (2) the nurses failed to advocate to Dr. Weary for the treatment of E.C.'s seizures, such as by giving phenobarbital, prior to her transportation to the neonatal care unit at Rapides Regional Medical Center in Alexandria, Louisiana.  [ECF No. 132-1 at 4]; [ECF No. 133 at 2-3]; [ECF No. 156 at 2].[1]  The Moving Defendants argue that Plaintiff's advocacy claims fail because they "are not supported

---

[1] Citing to the report of Katie Leon Guerrero, RN, RNC-OB, C-EFM, Plaintiff's nursing expert [ECF No. 132-1], the Moving Defendants explain:  "At issue here are Items 6 and 14 … ." Items 6 and 14 in the Guerrero report provide:

> 6.  Failure to advocate for Lacie Cupit and her baby after two failed vacuum attempts and deteriorating fetal heart rate pattern
>
> ...
>
> 14. Failure to advocate for treatment of Baby [E.C.'s] seizures in the hours before transport

[ECF No. 132-1 at 4].

The Court notes that, under Mississippi law, Nurse Guerrero can offer opinions on breaches of the standard of care but not on medical causation, which the Mississippi Supreme Court has held to be outside the scope of nursing practice.  Vaughn v. Miss. Bapt. Med. Ctr., 20 So.3d 645, 652 (Miss. 2009) ("We now explicitly hold that nurses cannot testify as to medical causation.").
.

3

by any evidence that such advocacy would have resulted in any change in care and treatment" and because there is no evidence that "such failure to advocate was the cause or proximate cause of any injury … ."  Motion at 1-2.  Plaintiff counters that the "evidence is overwhelming that these breaches in the standard of care by Defendants proximately caused E.C.'s injury."  [ECF No. 156 at 3].

## Summary Judgment Standard

Summary judgment is appropriate, pursuant to Rule 56 of the Federal Rules of Civil Procedure, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  Id.  A party cannot defeat a properly-supported summary judgment motion by directing the Court to conclusory allegations or presenting only a scintilla of evidence.  Lincoln v. Scott, 887 F.3d 190, 195 (5th Cir. 2018).

The evidence must be reviewed in a light most favorable to the nonmoving party. Vann v. City of Southaven, Miss., 884 F.3d 307, 309 (5th Cir. 2018); Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010). The Court neither assesses credibility nor weighs evidence at the summary-judgment stage. Wells v. Minnesota Life Ins. Co., 885 F.3d 885, 889 (5th Cir. 2018). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

<u>Legal Analysis and Discussion</u>

Key to the Moving Defendant's position is their contention that Plaintiff has failed to prove that (i) Dr. Jones would have performed a Cesarean section delivery if the nursing staff had advocated for one; and (2) Dr. Weary would have administered phenobarbital if Nurse Hollowell had advocated for it. E.g., [ECF No. 133 at 9-10]. According to the Moving Defendants, Plaintiff has not established causation, an essential element of Plaintiff's medical malpractice claim under Mississippi law.

[ECF Nos. 133 & 173]. Plaintiff vigorously disagrees. [ECF No. 156].

The alleged act of medical malpractice occurred in Mississippi, and the parties do not dispute that Mississippi law applies to the resolution of the Motion. Massey v. United States, 565 F.App'x 326, 327-28 (5th Cir. 2014). Under the substantive law of Mississippi, a plaintiff must establish three elements to prevail on a medical malpractice claim:

> (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury;
>
> (2) a failure to conform to the required standard; and
>
> (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.

Id.; Norman v. Anderson Reg'l Med. Ctr., 262 So.3d 520, 523 (Miss. 2019); Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645, 650 (Miss. 2009); Hubbard v. Wansley, 954 So.2d 951, 956-57 (Miss. 2007). A plaintiff may not "simply offer evidence that because injuries arose after an act of negligence that act of negligence is the cause in fact for those injuries." Patterson v. Radioshack Corp., 268 F.App'x 298, 302 (5th Cir. 2008) (citing Jackson v. Swinney, 244 Miss. 117, 140 So.2d 555, 556–57 (1962)). Instead, Mississippi law requires a claimant in a

6

medical malpractice suit to present expert testimony "to identify and articulate the requisite standard that was not complied with" and to "establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries."  Hubbard, 954 So.2d at 957 (quoting Barner v. Gorman, 605 So.2d 805, 809 (Miss.1992)); accord Massey v. United States, No. 5:11-CV-60, 2013 WL 4483439, at *2 (S.D. Miss. Aug. 19, 2013), aff'd, 565 F.App'x 326 (5th Cir. 2014).  The failure to present expert testimony on any one of the three elements of a medical malpractice suit is grounds for summary judgment in the defendant's favor.  Massey, 565 F.App'x at 327–28; Est. of Sanders v. United States, 736 F.3d 430, 436 (5th Cir. 2013).

    The Moving Defendants "[a]ssum[e] for purposes of this motion that Nurse Guerrero's opinions establish (1) the requisite standard of care and (2) the nurses' failure to conform to that standard," [ECF No. 133 at 6], and focus their efforts instead on the third element of a medical malpractice claim – proximate causation.  The Moving Defendants argue that, in order to establish causation on a failure to advocate claim, Mississippi cases require proof that, had the nursing staff advocated for the patient, the physician would have followed a different treatment option.  Id. at 9-12; Smith v. Hardy Wilson

Mem'l Hosp., 300 So.3d 991, 998 (Miss. 2020) (affirming grant of summary judgment for the defense where record contained no proof that doctor "would have changed his mind when faced with opposition from the nurses"); see also Miss. Baptist Health Sys. Inc. v. Harris, 320 So.3d 484, 489 (Miss. 2021) (reversing denial of summary judgment for lack of causation because "[n]o proof was presented that Dr. Dawson would have changed his mind."). Plaintiff counters with expert opinions and factual evidence in the record that Plaintiff argues is sufficient to establish that the nurses' failure to advocate for a different treatment more probably than not caused or contributed to E.C.'s injuries.

Because the briefs submitted to the Court present no argument as to Plaintiff's satisfaction of the first and second elements of a medical malpractice claim under Mississippi law (i.e., the existence of a duty by the defendant to conform to a specific standard of conduct and the breach of that standard), the Court will review in this Memorandum Opinion the record evidence related to the third element – causation. Under Mississippi medical malpractice law, Plaintiff must present expert testimony to establish that the nurses' failure to advocate for a different treatment was the proximate cause, or

proximate contributing cause, of E.C's injuries.  See Hubbard, 954 So.2d at 957.  In addition, the record must contain factual evidence that supports the experts' opinions.  Smith, 300 So.3d at 998-97 ("[A]n expert's mere allegations without detailed and precise facts will not prevent summary judgment.") (internal quotation marks omitted) (quoting Herrington v. River Forest Prods., Inc., 733 So.2d 774, 779 (Miss. 1999) and Strantz v. Pinion, 652 So.2d 738, 742 (Miss. 1995)).  In other words, is there (i) expert testimony that establishes the nurses' failure to advocate to Dr. Jones and Dr. Weary for a different treatment more probably than not caused or contributed to E.C.'s injuries, and (ii) factual evidence in the record that supports any such expert opinion?  The Court will address each failure to advocate claim separately:

    1.  <u>Failure to advocate as to Dr. Jones</u>.  On the element of causation, Plaintiff points to the expert opinions of Aaron Caughey, M.D.  Of note are certain opinions in Dr. Caughey's Declaration:

> 8) The failure of Nurses Usnik and Cavin to speak up and alert Dr. Jones of the need to expedite delivery after the second failed vacuum attempt was a breach in their duty to advocate for E.C. If Dr. Jones did not expedite delivery, the nursing staff should have gone up the Hospital's chain of command to protect the safety of E.C.  The nurses' failure to speak up to Dr.

> Jones or to use the chain of command if Dr. Jones did not listen was a contributing cause by this delivery team of E.C.'s harm.
>
> . . .
>
> 10) In this case it is evidenced in Dr. Jones' deposition that she had lost track of time after the second pop-off at 8:30. She could not answer why she waited 54 minutes and took no action to delivery the baby or make sure the fetal heart rate was reassuring. Had the nurses on the delivery team spoken up, I believe it is much more probable than not that Dr. Jones would have re-evaluated the situation and would have either turned off the oxytocin and closely monitored both the mother and baby, or she would have immediately moved to deliver the baby.
>
> 11) The nurses did not speak up and advocate for safe, reasonable care. Again, Dr. Jones lost track of time and did not know why the delivery was delayed 54 minutes until 9:24 p.m. The failure to speak up and communicate by the delivery team caused injury to E.C.
>
> 12) . . . In her deposition Dr. Jones was unable to provide an explanation for the delay in delivery. More probably than not, Dr. Jones would have listened to the nurses on the team and would have remedied the fetal heart rate or expedited delivery rather than have to explain her decision to a supervisor in the chain of command.

Declaration of Aaron Caughey, M.D., [ECF No. 156-1 at 7-8].

With respect to factual evidence in support of Dr. Caughey's causation opinions, deposition testimony from Dr. Jones shows that she lost track of time between her attempts to extract E.C. from the birth canal with a Kiwi vacuum pump but

10

would have listened to the nurses if they had spoken up and told her to stop the vacuum procedure:

> Q. Have you ever read the Kiwi manufacturer's instruction manual?
>
> A. Not that I can recall.
>
> Q. Can you read No. 13 for me?
>
> A. "Procedure should not last greater than 20 minutes."
>
> Q. Is that instruction something you also were taught?
>
> A. Yes.
>
> Q. What does that mean to you, the vacuum extraction operative delivery should not last longer than 20 minutes?
>
> [Objection to form]
>
> MR. TOWNSLEY: What does that mean to you, No. 13?
>
> . . .
>
> A: To me, that means that the vacuum should not be actually applied to the fetal head for more than 20 minutes.
>
> . . .
>
> Q. Did any of the nurses speak up in the room whenever 20 minutes went by -- so now I'm talking about you started this vacuum at 8:15. At 8:35, when 20 minutes had passed, did any nurse speak up in the room and tell you that you needed to stop the procedure with the vacuum?
>
> A. Not that I can recall.

11

>   Q.   If they had spoken up, did you have the kind of communication with the nurses that you would have listened?
>
>   A.   Yes.

Jones Dep. 153:16-156:18 [ECF No. 132-2 at 7-10].

Dr. Jones's deposition testimony also demonstrates that she was unaware of a 54-minute delay[2] between the second failed vacuum pump extraction attempt and the third attempt:

>   Q:   What happened and what did you do after 8:30 and you had this second pop-off?
>
>   A:   Similar to the first. I didn't think – I thought that she would deliver spontaneously because the infant was very -- right there at the perineum, basically. I put the vacuum down and we continued to push.
>
>   Q:   The first time you did that for 15 minutes, and you applied the vacuum a second time. This time you waited 54 minutes; did you know that?
>
>   A:   I did not know that.
>
>   Q:   Why did you wait 54 minutes before applying the vacuum a third time?
>
>   A:   I can't say.

---

[2] The Hospital's 30(b)(6) representative testified that it was Hospital policy for the nurse to keep track of the timing of vacuum extraction procedures and speak up when certain time periods were reached. Hospital 30(b)(6) Dep. 75:2-21 [ECF No. 156-3 at 4].

12

Jones Dep. 177:4-17 [ECF No. 132-2 at 13].

The foregoing testimony distinguishes this claim from the nonexistent evidentiary situation in Smith and Mississippi Baptist Health where the Mississippi Supreme Court could find nothing in the record to suggest that the physician would have changed the course of treatment had a nurse urged him to do so. Smith, 300 So.3d at 999 ("We decline to draw an inference for the Smiths when the record is devoid of facts upon which the inference can reasonably be based."); Miss. Baptist Health, 320 So.3d at 488 ("Nothing in the record supports that . . . Dr. Dawson would have changed the course of treatment had a nurse urged him to do so based on a single piece of information Dr. Dawson already knew and had considered.").

Viewing the above evidence in the light most favorable to Plaintiff -- as the Court must do at the summary judgment stage, and given the importance of tracking how many minutes had passed during the vacuum extraction procedure (a purely factual, objective determination that did not require subjective medical judgment), the Court finds it reasonable to infer that Dr. Jones would have listened to the nursing team and re-evaluated the delivery options, if the nursing team had advocated for E.C. and her mother by informing Dr. Jones of the number of minutes

elapsed during and between the extraction attempts. The Moving Defendants' request for partial summary judgment on the failure to advocate claim as to Dr. Jones is denied.

    2. <u>Failure to Advocate as to Dr. Weary</u>. In order to prove causation with respect to the claim involving Dr. Weary, Plaintiff relies on the expert reports and affidavits of Stephen T. Glass, M.D., [ECF No. 156-8], and Terrie E. Inder, M.D. [ECF Nos. 132-5 & 156-10]. Having carefully reviewed these expert reports and affidavits, the Court must agree with the Moving Defendants that nothing therein establishes, or even addresses, the causal element necessary for Plaintiff to prove its failure to advocate claim as to Nurse Hollowell and Dr. Weary. Indeed, none of these reports and affidavits discusses an alleged failure to advocate on the part of Dr. Weary's nursing team. Dr. Glass states that "[t]here was a fundamental failure to communicate between Nurse Hollowell and Dr. Weary", [ECF No. 156-8 at 27, ¶ 34], but he offers no statement or opinion on a "failure to advocate" by Nurse Hollowell or any other member of the nursing team and makes no comment whatsoever regarding whether a failure to advocate more probably than not caused or contributed to E.C.'s injuries. Likewise, Dr. Inder offers a detailed medical discussion of seizures, brain injury, and

14

therapeutic hypothermia in support of her general opinion that "Natchez Community Hospital and their staff breached the standard of care and caused harm to [E.C.'s] brain." [ECF No. 132-5 at 11]. However, she makes no mention of any nurse failing to advocate on E.C's behalf to Dr. Weary or the proximate cause of such a failure with respect to E.C.'s injuries.

Because Plaintiff has failed to present expert testimony on the element of causation, summary judgment in the Moving Defendants' favor on this failure to advocate claim is appropriate. Massey, 565 F.App'x at 327-28. In addition, the Court finds no factual support in the record to prove that Dr. Weary would have changed her mind and administered phenobarbital or another seizure medication or treatment, if Nurse Hollowell had urged her to do so. To the contrary, Dr. Weary made it clear that, in a situation such as this where the patient was being transferred to another hospital, she would take instruction regarding antiseizure medication from the accepting physician: "So I'm deferring to the accepting physician at all times." Weary Dep. 98:10-11 [ECF No. 132-3 at 12]. Plaintiff's failure to advocate claim as to Dr. Weary cannot survive under

15

Smith and Mississippi Baptist Health. Smith, 300 So.3d 991; Miss. Baptist Health, 320 So.3d 484.

Given the Court's disposition herein of the Motion [ECF No. 132], Plaintiff's Motion to Strike [ECF No. 207] will be denied as moot.

ACCORDINGLY,

IT IS HEREBY ORDERED AND ADUDGED that the Moving Defendants' Motion for Partial Motion for Summary Judgment [ECF No. 132] is GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike August 9, 2021 Letter Submitted by Defendant Danita Weary, M.D. [ECF No. 207] is DENIED as moot.

SO ORDERED AND ADJUDGED this 26th day of August 2021.

                               /s/ David Bramlette
                               UNITED STATES DISTRICT JUDGE