```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      WESTERN DIVISION
```

RAYMOND JAMES TRUST, N.A., TRUSTEE
OF E.C. CARE TRUST, A LOUISIANA TRUST                    PLAINTIFF

v.                              CIVIL ACTION NO: 5:19-CV-103-DCB-MTP

NATCHEZ HOSPITAL COMPANY, LLC d/b/a
MERIT HEALTH NATCHEZ (NHC) formerly
d/b/a NATCHEZ REGIONAL MEDICAL
CENTER, formerly NATCHEZ COMMUNITY
HOSPITAL, L.L.C., MELISSA JONES, M.D.,
JENNIFER RUSS, M.D., DANITA WEARY, M.D.,
BONNIE VINES, R.N., LAURA USNIK, R.N.,
PATRICIA CALVIN, R.N., AND JOHN AND
JANE DOES A; B; C; D; and E                             DEFENDANTS


## ORDER AND MEMORANDUM OPINION

This matter is before the Court on a Motion for Partial Summary Judgment Regarding Lack of Transfer for Hypothermic Treatment [ECF No. 129](the "Motion") filed by Defendants Natchez Hospital Company, LLC d/b/a Merit Health Natchez (NHC) formerly d/b/a Natchez Regional Medical Center, formerly d/b/a Natchez Community Hospital, L.L.C. (the "Hospital"), Bonnie Vines, R.N., Patricia Calvin, R.N., and Laura Usnik, R.N. (collectively, the "Moving Defendants").  Defendant Danita Weary, M.D. ("Dr. Weary") has not joined this Motion.  The

Moving Defendants and Dr. Weary are referred to collectively herein as the "Defendants".  The Court having examined the Motion, the parties' submissions, the record, and the applicable legal authority, and being informed in the premises, finds as follows:

## Background

On October 15, 2019, Raymond James Trust, N.A., Trustee of E. C. Care Trust, a Louisiana Trust ("Plaintiff"), filed this action against Defendants.  [ECF No. 1].  Plaintiff alleges, among other things, negligence, breaches of the standard of care, and failure to supervise during and after delivery of the infant, E.C.  Id.  According to the Complaint, Defendants' inadequate care of E.C. caused the infant to suffer a grave brain injury.  Id. ¶ 39.  With respect to hypothermic or cooling therapy, the medical treatment at issue in the Motion, Plaintiff alleges in its Complaint that E.C.'s umbilical cord blood gas reading collected at birth revealed a severe acid/base imbalance.  Plaintiff contends that the abnormal lab values, along with E.C.'s need for fourteen (14) minutes of resuscitation after birth, should have indicated to the nursing staff and physicians that E.C. needed (i) head cooling to minimize brain damage, and (ii) a transfer to a facility with a

2

higher level of care.  Id. ¶ 26.  Plaintiff further alleges that the pediatrician, Dr. Jennifer Russ (previously dismissed from this lawsuit by agreement of the parties [ECF No. 80]), and the hospital staff failed to communicate about E.C.'s traumatic birth.[1]  [ECF No. 1] ¶ 26.

The Moving Defendants frame the issue for the Court's review as being limited to a simple question of causation in

---

[1] The Complaint alleges in relevant part:

26. Newborn E.C. also had an umbilical cord ABG collected not long after birth, which showed a serious acid/base imbalance with a *critical* pH of 6.84, PCO2 of 56, PO2 of 26, and base excess of -24.3. Despite these critical lab values, there is no indication in the record that these lab values were communicated to any physician. Requiring resuscitation for 14 minutes after birth and having a pH of 6.84 with a base excess of -24.3 should have been an indication to the nursing staff and physicians that E.C. needed head cooling to minimize any brain damage and she needed transfer to a higher level of care. Dr. Jennifer Russ and the hospital staff failed to communicate about E.C.' s traumatic birth, and Dr. Russ did not come to check on baby E.C. until the next morning.

27. E.C was transitioned from the radiant warmer to an open crib almost 7 hours after birth.  Records do not support that Dr. Russ was notified about E.C.' s birth or the critically abnormal ABG results. Baby E.C. had a stocking cap placed on her head instead of a cooling cap. This contributed to her severe brain injury.

Complaint, [ECF No. 1] at 7, ¶¶ 26-27 (emphasis in the original).

fact: whether there is "an adequate factual basis for the claim that E.C. would have been sent to the hospital in Alexandria and started receiving hypothermia therapy within six hours after birth if a hospital nurse had made a phone call to one of the pediatricians." Memorandum in Support of the Motion, [ECF No. 130] at 6. The Moving Defendants argue that, given the deposition testimony of two pediatricians, Drs. Russ and Weary, Plaintiff cannot factually substantiate a failure to notify claim, and summary judgment is therefore appropriate. Id. at 8.

## Summary Judgment Standard

Summary judgment is appropriate, pursuant to Rule 56 of the Federal Rules of Civil Procedure, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A party cannot defeat a properly-supported summary judgment motion by directing the Court to conclusory allegations or presenting only a scintilla of evidence. Lincoln v. Scott, 887 F.3d 190, 195 (5th Cir. 2018).

The evidence must be reviewed in a light most favorable to the nonmoving party. Vann v. City of Southaven, Miss., 884 F.3d 307, 309 (5th Cir. 2018); Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010). The Court neither assesses credibility nor weighs evidence at the summary-judgment stage. Wells v. Minnesota Life Ins. Co., 885 F.3d 885, 889 (5th Cir. 2018). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## Discussion

The Court's review of this record leads to a conclusion that there are too many moving pieces and unclear facts, some of which are in dispute, for partial summary judgment regarding the lack of transfer for hypothermic treatment to be appropriate at this time. On this record, it is not clear to the Court that the issue for review is as simple as the Moving Defendants assert. For example, while the parties do not dispute the fact that E.C.'s cord blood gas results were abnormally low (Motion ¶ 2 at 2), there appears to be no agreement regarding what effect

this information would have on a physician's evaluation of the need for hypothermic or cooling therapies. Both pediatricians testified that they did not receive E.C.'s cord blood gas results. Russ Depo., 42:8-19 [ECF No. 129-1] at 27; Weary Depo., 20:19-22 [ECF No. 129-5] at 6; see also Russ Interrogatory Response No. 3 [ECF No. 129-2] at 2. The deposition testimony of E.C.'s nursery nurse, Ann Hollowell, reveals that she never received the cord blood gas results either. Hollowell Depo., 25:1-5, 26:2-10 [ECF No. 158-2] at 6-7. Nurse Hollowell also testified that the Hospital had no written policy for cooling criteria in 2015 (which was confirmed by the Hospital's 30(b)(6) deponent), she did not know what passive cooling was, and she had not received in-depth training on the symptoms of hypoxic ischemic encephalopathy (HIE) in infants. Hollowell Depo., 12:25 – 14:16 [ECF No. 158-2] at 2-4; Id. 24:2-8 [ECF No. 158-2] at 5; Hospital 30(b)(6) Depo., 93:5-12 [ECF No. 158-4] at 7. In short, this record suggests that, due to a lack of training and information, Nurse Hollowell never was in a position to make that "phone call to one of the pediatricians." Memorandum in Support of the Motion, [ECF No. 130] at 6. The fact questions regarding training, supervision, communication, medical evaluations, and hypothermic treatment

6

decisions are so intertwined that it would be imprudent for this Court to distill the question for review down to whether there is factual support to prove the likely result of a phone call that never could happen.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513–14, 91 L. Ed. 2d 202 (1986)("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").  For now, the Court is not persuaded that the Moving Defendants are entitled to judgment as a matter of law on the facts presented.

ACCORDINGLY,

IT IS HEREBY ORDERED AND ADUDGED that the Moving Defendants' Motion for Partial Summary Judgment Regarding Lack of Transfer for Hypothermic Treatment [ECF No. 129] is DENIED.

SO ORDERED AND ADJUDGED this 7th day of September 2021.

/s/    David Bramlette
UNITED STATES DISTRICT JUDGE